# WHEELING.

## RUHL *v.* RUHL.

Submitted January 26, 1884—Decided May 3, 1884.

1. A special commissioner in a chancery cause or a receiver of the court is simply an officer of the court, and as such he has no right to intermeddle in questions affecting the rights of the parties or the disposition of the property or funds in his hands. His holding is the holding of the court, and he cannot interfere in the litigation or ask for the revision of any order or decree affecting the rights or claims of the parties ; but when his own accounts or his personal rights are affected, he has the same means of redress, that any other party so affected would have. (p. 282.)

2. Where a court makes a void decree, by which it directs its receiver to pay over funds in his hands, and for his failure to obey such decree attaches and imprisons him, such receiver is entitled to have such order of imprisonment reviewed. (p. 282.)

3. A contempt of court is in the nature of a criminal offence ; and the proceeding for its punishment is criminal in its character. Consequently, the proceedings after the attachment issues are distinct from the suit, in which the contempt was committed, and should be entered separately and entitled in the name of State against the offender. If the inferior court fails so to enter the proceedings, that will be error for which the Appellate Court will on an appeal by the offender reverse so much of the decree, if improper on its merits, as orders his punishment. (p. 283.)

4. It is no contempt to disobey an order or decree, which the court had no jurisdiction or legal authority to make. Such an order is void. (p. 283.)

5. After the close of the term the parties to a cause, in which a final decree has been pronounced, are no longer in court; and no further order or decree as to them can be made therein, unless they are again brought into court by bill of review or by some other recognized legal method. After a final decree the court has no further jurisdiction either of the subject-matter or of the parties ; and all subsequent orders or decrees entered without notice to the parties are void. (p. 284.)

The facts of the case are stated in the opinion of the Court.

*W. P. Hubbard* for appellant.

*H. M. Russel* for appellee.

SNYDER, JUDGE:

This suit was pending in the municipal court of Wheeling prior to and on the 9th day of February, 1878, and on that day said court entered a decree therein confirming the report and.sale of certain real estate made by Dennis O'Keeffe special commissioner, in pursuance of a former decree in the cause and directing said commissioner to withdraw the sale bonds for the deferred payments and collect the same as they should become due, "and that, after paying costs which may hereafter accrue in this cause out of the proceeds thereof, to pay the residue in equal parts to the said complainant, John Ruhl, and the said John T. Sullivan, guardian of the defendant, Joseph Ruhl, for the use of his ward."

After said term no order was made in the cause except an order of continuance, entered in March, 1878, until the order of June 5, 1880, hereinafter mentioned, was made.

One Thomas W. Weitzel, who had brought an action of *assumpsit* in the circuit court of Ohio county against Joseph F. Ruhl, a non-resident of this State, caused the clerk of said circuit court to issue an order of attachment against the estate of said Ruhl, designating by a memorandum endorsed thereon that Dennis O'Keeffe and others were debtors of said Ruhl and requiring them to appear at the next term of said court and answer, &c. This order was served on the garnishees and at the March term, 1879, an order of publication having been executed against the defendant, the said Ruhl, and he failing to appear, the court ascertained that the said defendant was indebted to the plaintiff in the sum of two hundred and twenty-six dollars and nineteen cents, and continued the case. On May 5, 1880, the said circuit court after reciting that it appeared from the answer of Dennis O'Keeffe that he, "as special commissioner in the chancery cause of *John Ruhl* v. *Joseph Ruhl*, held" two sale notes for the land sold as aforesaid in the proceeds of which the said Joseph F. Ruhl had an interest, declared that the plaintiff's order of attachment was a lien on the said interest of the

defendant in said proceeds to the extent of the plaintiff's claim and costs, but declined to make any order in relation to said fund and gave the plaintiff leave to apply to the municipal court for such order and relief as that court might deem proper for the enforcement of the plaintiff's lien.

Weitzel exhibited this order to the municipal court and on June 5, 1880, that court made an order directing said O'Keeffe, special commissioner, out of the interest of Joseph Ruhl in the proceeds of said sale notes, to pay under the order of the circuit court, the plaintiff's said judgment and costs. And on the same day the circuit court made a like order directing said special commissioner, out of said Joseph Ruhl's interest in said proceeds, to "hold and pay out under the order of this court an amount of money sufficient to pay off and satisfy the lien of the plaintiff amounting to two hundred and twenty-six dollars and nineteen cents with interest and costs.

The municipal court, on June 9, 1882, upon the motion and affidavit of Weitzel, ordered a rule to issue against Dennis O'Keeffe requiring him to appear and show cause why he should not be attached, &c., for his failure to comply with the said order of the circuit court and of this court entered June 5, 1880. This rule having been served on O'Keeffe, he gave written notice to Weitzel that he would, for errors assigned in said notice, move the municipal court to set aside and reverse its said order of June 5, 1880.

On March 19, 1883, the municipal court overruled said motion to set aside and reverse said order of June 5, 1880, and refused to discharge the rule against O'Keeffe. The decree then proceeds as follows: "And the said O'Keeffe not showing nor asking to be allowed to show any further or other cause why he should not be attached or otherwise proceeded against for his failure to comply with the order of this court made on the 5th day of June, 1880, and with the order of the circuit court of Ohio county, mentioned in said rule, it is ordered that the sergeant of the city of Wheeling do attach the body of the said Dennis O'Keeffe and keep him in safe custody in the jail of Ohio county aforesaid until the further order of this court."

On the petition of Dennis O'Keeffe he was allowed by this

Court an appeal and *supersedeas* from this decree and the order entered by the municipal court on June 5, 1880.

The appellee, Thomas W. Weitzel, claims that the rights and duties of the appellant are in this cause merely those of a special receiver and that he is, therefore, not entitled to appeal. *Blair* v. *Core*, 20 W. Va. 255; *In re Colvin*, 3 Md. Ch. Dec. 303.

It must be conceded that a receiver or commissioner, such as the appellant here, is but an officer of the court and he has no right to intermeddle in questions affecting the rights of the parties or the disposition of the property or funds in his hands. His holding is the holding of the court for him, from whom the possession is taken, and he has no more right to interfere in the litigation or ask for a revision of a decree or order affecting the rights or claims of the parties than an entire stranger to the cause. But where his own accounts or his personal rights are affected, he must necessarily have the same means of redress that any other party so affected would have. *Hinchley* v. *Railroad Co.*, 94 U. S. 467; *Horey* v. *McDonald*, 109 *Id.* 140; *Grinnan* v. *Long*, 22 W. Va. 693.

It cannot be doubted that, where a court makes a void decree by which it directs its receiver to pay over funds in his hands and, because he fails to obey such void decree, attaches and imprisons him for an indefinite time, the receiver is entitled to have such order of imprisonment reviewed. If the decree was void he was not bound to obey it, and he certainly could not be punished for refusing to do what he was under no legal obligation to do. *Allegheny Bank's Appeal*, 48 Pa. St. 328, 334. If he is not entitled to have the proceedings reviewed in such case he must either violate his duty and thereby, perhaps, subject himself to liability for the fund, or he must content himself to remain in prison until the court sees proper to discharge him. In the one event his accounts as receiver may be affected and, in the other, he is deprived of his liberty; so it seems to me entirely clear that he is entitled to have the matter reviewed by the Appellate Court.

It is claimed however, that so much of the decree of March 19, 1883, in this cause as pertains to the proceeding against the appellant for contempt, cannot be reviewed on appeal,

but only, if at all, on a writ of error. *Balt. & Ohio R. R. Co.* v. *Wheeling*, 13 Gratt. 40. As a general proposition, I think this position is correct. A contempt of court is in the nature of a criminal offense, and the proceeding for its punishment, is in its character a criminal proceeding. Before the attachment for the contempt issues the proceedings are to be entitled in the names of the parties to the suit, but afterwards in the name of the State. *State ex. rel.* v. *The Harper's Ferry Bridge Co.* 16 W. Va. 864. According to this authority the court below should have entitled the proceedings after the return of the rule against O'Keeffe in the name of the State, and made it a separate and distinct proceeding, and entered a separate order in relation thereto. From such an order a writ of error could have been taken. But no such order was made by the municipal court in this cause. It follows then that said court erred in entering such an order on the chancery side, and if it is wrong it must be reversed for this error as well as on its merits. A court cannot prevent the reversal of an erroneous order by entering it in the wrong order book. That would be to condone one error by committing another and greater error. But if the order of June 5, 1880, was void, the order of imprisonment was clearly erroneous; for it is no contempt of a court to violate or disobey an order which the court had no authority to make. If the court had no jurisdiction to make said order it is without authority and void. *People* v. *O'Neal*, 47 Cal. 109; *Swinburn* v. *Smith, Judge &c.*, 15 W. Va. 483, 500. This brings us to enquire whether or not said order of June 5, 1880, was void? And this depends upon the fact whether or not the decree of February 9, 1878, was final.

"A decree in chancery, disposing of the whole subject, deciding all questions in controversy, ascertaining the rights of all the parties and awarding the costs, though it appoint a commissioner to sell part of the subject, and account for and pay the proceeds to the parties, with liberty to them to apply to the court to add other or substitute new commissioners, or for a partition of the subject directed to be sold in kind, is a *final* decree." *Harvey* v. *Branson*, 1 Leigh 108. According to this definition, which is binding authority in this Court, the said decree of February 9, 1878, was certainly a

final decree. It not only disposed of the whole subject, including the costs, but it did not reserve the right to make any further order or liberty to any of the parties to apply for further directions in the cause. Perhaps, without such reservation the court might have had the power to compel its commissioner by rule against him to carry out the directions of said decree; but either with or without such reservation, it could not affect the rights of the parties as fixed and finally determined by the decree. After the close of the term, the parties to a cause, in which a final decree has been pronounced, cease to be parties litigant in the court and no further order or decree as to them can be thereafter made unless they are again brought into court by bill of review or some other recognized legal mode. *Wright* v. *Leclaire*, 3 Clarke (Ia.) 221. In *Battaile* v. *Md. Hospital, &c.*, 76 Va. 63, the court of appeals held, that the circuit court by rendering a final decree "put the cause beyond its control and it cannot, upon discovery of the error, recall it in a summary way, and resume a jurisdiction which has been exhausted." The court also held in that cause that, "there are but two ways known to the law whereby a final decree can be set aside, that is, by bill of review or by appeal." "After final decree the court has no further jurisdiction, either of the subject-matter or of the parties, and all subsequent decrees and orders, entered without notice to the parties are void." *Johnson* v. *Anderson, Id.* 766. In this case the court says: "It is true, the court in that decree (the decree of June 22, 1868) as it did in the decree of July, 1880, might have formally applied the money and ordered payment of the balance due on the last note, but it did not. *It had evidently given all the relief in the cause contemplated.* The cause was ended and the court could proceed no further. It had no further jurisdiction in that proceeding, either of the subject-matter or of the parties. It would seem that the decree of July, 1880, was rendered in the absence of the defendant upon a mere motion of the plaintiff by his attorney, and without notice to anybody. The original cause being ended, the proceeding was a new one against the defendant, and, being had without notice, the personal decree against him is a nullity and would be so treated, we presume, everywhere." 76 Va.

771. In the first of these causes, cited from 76 Va., the court had in its decree directed, "that the cause be stricken from the docket," but no such direction was made in the second of said causes, nor is there any such in the decree of February 9, 1878, now in question; but I do not think the addition or omission of such direction would in any manner affect the character of the decree if it was in fact final. In the absence of such direction the character of the decree must be ascertained from its terms and, if it appears therefrom that all the relief contemplated has been given and no further action is necessary to conclude all the questions and matters in litigation, it is a final decree, whether the decree in terms so declares or not, or whether it is ordered to be stricken from the docket or not. In many of the courts of this State it is unusual to make an order striking the cause from the docket when it is ended. The practice is for the clerk to omit it from the docket and, if he improperly does so, counsel may order him to replace it on the docket.

The order of June 5, 1880, which is the foundation of the contempt proceeding in this cause was made more than two years after the said final decree of February 9, 1878, without notice to any one; it was made as was the decree in *Johnson* v. *Anderson, supra,* in the absence of all the parties to the suit, simply on the motion of Weitzel, an entire stranger to the cause. The defendant Joseph F. Ruhl, whose money it was sought to be taken and subjected to an alleged debt of said Weitzel, was not in court and had no notice of the proceeding whatever. The said decree as to him was, therefore, clearly void. By the former decree of February 9, 1878, the fund in question was directed to be paid by the commissioner to his guardian. That direction could not be modified or changed by said void order, and the commissioner was still legally bound to obey the said decree of 1878. If he should have obeyed the void order and had subsequently been called upon to comply with the former legal order, he could not have excused a non-compliance by invoking and setting up said void order. He would have either to show that the fund was rightly paid to Weitzel, aside from said order, or pay the same to the defendant Ruhl again.

If the said order of June 5, 1880, had been merely erroneous and not void the commissioner could not question it by appeal or otherwise. If it was such an order as would protect him, it would be his duty to obey it and, it he refused to do so, he could be properly proceeded against for a contempt. But being, as we have seen, void and no protection to him, he was not bound to obey it and is not in contempt for declining to do so.

The said decree of March 19, 1883, so far as it relates to the contempt proceedings against the appellant, is erroneous for the reasons aforesaid. It is also erroneous because it failed to define the term of the imprisonment. It directs the commissioner to be imprisoned "until the further order of the court." Even if it had been proper to commit the appellant, the order should have shown a conviction for the offence and the term of his imprisonment should have been defined. *In re Hammet*, 9 R. I. 248, the offender was directed to be held in prison for his contempt of the court; and, on a writ of *habeas corpus*, the supreme court discharged him "for the reason that no definite term of punishment was named." See also *Ex Parte Adams*, 25 Miss. 883.

Perhaps the most appropriate relief for the appellant in this case would have been by *habeas corpus*, but because he could have been thus discharged, it does not follow that he may not also have that portion of the decree which erroneously commits him, set aside and reversed on appeal. He could not of course obtain a writ of error to a decree in chancery. But as the record affirmatively shows, that the only alleged offence against him was his refusal to obey the void order of June 5, 1880, the erroneous portion of the decree of March 19, 1883, founded on said order, so far as it pertains to the appellant, may be safely and properly reviewed and set aside by this Court on appeal.

From what has preceded it is apparent that the appellant was not entitled to appeal from any of the other orders or decrees in the cause. No opinion is expressed as to the effect of the orders of the circuit court as they are not before us. Whether the appellant was properly garnisheed by that court, and if so, whether by refusing to obey its order of June 5, 1880, he committed a contempt of that court are ques-

tions not before this Court; because for such contempt, if it was such, the municipal court could not punish him. One court cannot punish for contempt of another court. The municipal court has jurisdiction to enforce obedience to its own legal orders, but not to the orders of another court. *William-son's Case*, 26 Pa. St. 9; *Gates* v. *Lansing*, 9 Johns. 423.

I am therefore of opinion that, so much of the decree of March 19, 1883, as orders and directs "that the sergeant of the city of Wheeling do attach the body of the said Dennis O'Keeffe and keep him in safe custody in the jail of Ohio county aforesaid until the further order of this court," be reversed and annulled with costs to the appellant against the appellee, Weitzel, and that the appeal from the residue of said decree and also from the decree of June 5, 1880, be dismissed as improvidently awarded.

REVERSED IN PART.　　DISMISSED.